UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RAQUEL D ERVIN, | |
| Plaintiff, | |
| v. | Case No. 1:23-CV-336-CCB |
| T. BROWN, et al., | |
| Defendants. | |

**OPINION AND ORDER**

On July 25, 2023, Plaintiff Raquel D. Ervin filed a complaint in state court on behalf of herself and her minor child, R.E, against the City of Fort Wayne and Fort Wayne City Police Officers. (ECF 3). After removal to this Court, the complaint was amended twice adding seven police officers as named defendants. (ECF 35). Plaintiff brings claims under 42 U.S.C. § 1983 for violating her Fourth Amendment right to be free from unreasonable searches and seizures.

On October 2, 2024, Defendants City of Fort Wayne, Officer Treven Brown, Officer Joseph Gilson, Officer Jeremy Hoover, Officer Austin Dunakin, Sergeant Hollis Burton, Officer Joseph Wyatt, Officer Kelly Parnell, and Officer Eric Krull moved for summary judgment and designation of evidence. (ECF 46). A few days later, on October 8, 2024, Plaintiff moved for partial summary judgment on the issue of liability. (ECF 54). The parties' claims reflect disputes including whether exigent circumstances existed to allow for the warrantless entry of Plaintiff's home by Fort Wayne Police Department

("FWPD") Officers. Pending before the Court are fully briefed cross motions for summary judgment on the claims. Based on the applicable law, facts, and arguments, the cross-motions for summary judgment will be **GRANTED in part and DENIED in part**.

I.    **RELEVANT BACKGROUND**

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis below.

In May 2023, Plaintiff was living at 2510 Silver Wolf Trail in Fort Wayne, Indiana with R.E. (ECF 35 at 3). Plaintiff's son, Marquen T. Coker ("Coker"), was not living with Plaintiff at that time, but was living elsewhere in Fort Wayne with his father. (ECF 52 at 1). On May 6, 2023 around 2:30 p.m., FWPD Officer Dunakin responded to 2510 Silver Wolf Trail in response to a domestic battery. (ECF 48 at 1). The domestic battery was reported by Jamiah Buxton ("Buxton") who told police that Coker, the father of her child, had punched her in the face while they were en route to pick their child up from Plaintiff's house. (ECF 48 at 1). Buxton reported that there was a minor child in the car when Coker hit her and that Coker ran at her. (*Id.*); (ECF 46-1 at 1).

When Officer Dunakin arrived at the scene, Buxton flagged him down and told him that Coker had just run into Plaintiff's house. (ECF 48 at 1). After Buxton confirmed that Coker did not have any weapons on him, Officer Dunakin approached the house and knocked several times. (Dunakin Body Camera (Exhibit I) at 2:15, 2:55). A young girl, later identified as R.E., appeared in the window next to the door and told Officer Dunakin that her mom was on her way home. (*Id.* at 3:30). Officer Dunakin then told

2

the other officers on the radio that Plaintiff was on the way home. (*Id.* at 4:00). Several more officers arrived at the scene and began forming a perimeter around the house. (ECF 63 at 4). Coker can be heard yelling from inside the house while Officer Dunakin knocked a few more times and told Coker to come outside so they can talk. (Dunakin Body Camera (Exhibit I) at 4:37, 5:34). Officer Dunakin told Coker that they do not need to wait for Plaintiff to come home and Coker can come outside "like a grown man." (*Id.*)

Officer Dunakin then got on the radio again and told the other officers that Coker was not going to come out until Plaintiff got home. (*Id.* at 6:42). Yelling can again be heard from inside the house. (*Id.*). Coker appeared in the window next to the front door holding a young child and his cell phone. (*Id.* at 8:00). He told Officer Dunakin that he is staying inside and is not going to jail. (*Id.*). The child did not look distressed and at one point even playfully bangs on the window. (*Id.*).

Through her Ring doorbell, Plaintiff asked Officer Dunakin how she can help him. (*Id.* at 9:00). She then said she will be home in a few minutes. (*Id.*). Plaintiff told Officer Dunakin that she is around the corner and Coker can stay inside until she gets home because he did not feel comfortable. (*Id.* at 10:00). R.E. can then be seen walking down the stairs behind Coker. (*Id.* at 11:50). Coker then shut the blinds and the next clear view of him is when he is arrested on the front lawn. (*Id.* at 13:20; 24:15).

Officer Brown interviewed Buxton and learned that Plaintiff owns a gun. (Brown Body Camera (Exhibit M) at 7:25). Officer Brown told the other officers that Buxton believed that Plaintiff owns a gun. (*Id.* at 11:20).

3

Meanwhile, in the back of the house, a young boy calmly exited the back patio and was briefly arrested by officers. (Wyatt Body Camera (Exhibit L) at 0:26). Officer Wyatt, Sergeant Burton, Officer Gilson, and Officer Parnell walked onto the back porch. (*Id.* at 0:41). Sergeant Burton asked on the radio whether there are charges on Coker. (Gilson Body Camera (Exhibit K) at 16:21). Sergeant Burton told Coker to open the door or he will kick it in. (*Id.* at 16:24). Sergeant Burton asked again whether there are charges against the individual in the house and a male voice can be heard on the radio saying "affirmative." (*Id.* at 16:38).

At this point, FWPD officers did not have a warrant for Coker's arrest or a search warrant for Plaintiff's house. (ECF 63 at 4). Sergeant Burton then kicked the back patio door ten times, attempting unsuccessfully to kick the door in. (Gilson Body Camera (Exhibit K) at 16:40). Officer Wyatt took over, kicked the door twice, and forced the door open. (*Id.* at 17:04). Sergeant Burton, Officer Wyatt, Officer Gilson, and Officer Parnell entered the house and began searching for Coker. (*Id.* at 17:05). While searching the house, Officer Gilson found and escorted R.E. and Coker's minor child out of the house. (Gilson Body Camera (Exhibit K) at 21:08).

Back in the front yard, officers opened the front door as they conducted their search. (Dunakin Body Camera (Exhibit I) at 18:28). Shortly after the front door is opened, Plaintiff returned home. (Dunakin Body Camera (Exhibit I) at 20:23, 2:55). Plaintiff was upset with officers and wanted to know what they were doing in her house and why they kicked her door in when she told officers she was on her way

4

home. (*Id.*). Eventually, Coker walked out of the front door with his arms raised and was arrested. (Dunakin Body Camera (Exhibit I) at 24:15).

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present

5

sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III. ANALYSIS

Defendants move for summary judgment on all claims (ECF 46) and Plaintiff moves for partial summary judgment on the issue of liability (ECF 54). The parties raise the same arguments in the briefing for the cross motions, so the motions can be addressed together.

#### A. Section 1983 Claims

Defendants assert that the Officer Defendants are shielded by qualified immunity so their motion for summary judgment should be granted. (ECF 48 at 8). Courts evaluating qualified immunity must ask two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). This inquiry hinges on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne,*

6

526 U.S. 603, 614 (1999). The Court is not required to answer the questions in order, although it may be beneficial. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Officers conducting searches are entitled to qualified immunity where clearly established law "does not show that the search violated the Fourth Amendment." *Id.* at 243–44. The Court will first address whether the facts make out a violation of Plaintiff's Fourth Amendment rights.

"[T]he Court decided in *Payton v. New York* . . . that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) (citing *Payton v. New York*, 100 S.Ct. 1371, 1380 (1980)). The exigent circumstances exception "recognizes that there may be situations in which law enforcement officials may be presented with 'a compelling need' to conduct a search, but have 'no time to secure a warrant.'" *Bogan v. City of Chicago*, 644 F.3d 563, 571 (7th Cir. 2011) (citing *United States v. Dowell,* 724 F.2d 599, 602 (7th Cir.1984)). Examples of exigent circumstances, which are "few in number and carefully delineated," include hot pursuit of a fleeing suspect, preventing the destruction of evidence, or the need to render emergency assistance to an occupant or protect an occupant from imminent injury. *United States v. U.S. Dist. Ct. for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 318 (1972); *United States v. Ross*, 565 F. App'x 505, 509 (7th Cir. 2013); *see also United States v. Huddleston,* 593 F.3d 596, 600 (7th Cir.2010) ("[W]here police reasonably believe that their safety, or the safety of the public, may be threatened, exigent circumstances exist.")

7

The presumption that a warrantless search is unreasonable "may require the defendant to produce evidence of consent or of some other recognized exception to the warrant requirement." *Valance v. Wisel*, 110 F.3d 1269, 1278 (7th Cir. 1997). "[O]nce the defendant has done so, 'the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials.'" *Id.* (citing *Ruggiero v. Krzeminski,* 928 F.2d 558, 562-63 (2d Cir.1991)). In other words, the police bear the burden of demonstrating an urgent need that would justify a warrantless search or arrest, and once evidence of that exigent circumstance is presented, it is on the plaintiff to prove otherwise. *Welsh*, 466 U.S. at 749.

When reviewing a warrantless search to determine whether exigent circumstances existed, courts conduct an objective review, asking whether "a reasonable officer had a 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *United States v. Andrews,* 442 F.3d 996, 1000 (7th Cir.2006) (quoting *United States v. Saadeh,* 61 F.3d 510, 516 (7th Cir.1995)). An officer's "subjective belief that exigent circumstances exist is insufficient to justify a warrantless search." *United States v. Richardson,* 208 F.3d 626, 629 (7th Cir. 2000). This objective review is not conducted from the vantage point of an "omniscient observer" either. *Bogan*, 644 F.3d at 571–72 (citing *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir.1992) (emphasis in original)). Rather, it is based on the totality of facts "as they would have appeared to a reasonable person *in the position of the . . . officer*—seeing what he saw, hearing what he heard." *Id.*

8

Defendants argue that "there were exigent circumstances for the warrantless entry" into Plaintiff's house including hot pursuit and the prevention of harm to the children inside the house. (ECF 48 at 5). Further, they argue, since the forcible entry was necessary, some damage to Plaintiff's door and door frame was reasonable and therefore the officers did not violate Plaintiff's Fourth Amendment rights. (*Id.* at 7). Defendants present affidavits from the Officer Defendants and body camera footage from the scene to support their contention that "it was objectively reasonable for the police to be concerned about the safety of the juveniles in the house" because Coker had just committed a domestic battery against the mother of his child in front of a child and he was upset inside the house, out of view, with several juveniles. (*Id.*); (ECF 52-1 at 160). Defendants argue the situation was highly tense and Sergeant Burton decided to make entry into the house knowing that Coker was a "felony suspect who was not going to surrender on his own." (ECF 48 at 5). They argue the fact that Plaintiff was on her way home, likely with a gun, contributed to the increasingly tense situation and that entering the house to arrest Coker was necessary to prevent harm to any children inside the house. (*Id.* at 6). Supporting Defendants' position is evidence from the affidavits and body camera footage where Coker can be heard yelling from inside the house that he is not going to jail and the fact that he disappears into the house and officers cannot tell what he is doing or whether he is retrieving a weapon or harming any of the children present. (Dunakin Body Camera (Exhibit I) at 4:45, 8:02).

Plaintiff argues in opposition that Defendants did not have "exigent circumstances or other justifications that would allow a search without a warrant."

9

(ECF 35 at 2); (ECF 54 at 1). Plaintiff contends that none of the officers had information that Coker presented a danger to anyone in the home and that the Officer Defendants knew she was on her way home and that Coker intended to come outside once Plaintiff got home. (ECF 63 at 1). Plaintiff argues that police could not have been in hot pursuit because when officers first arrived, Coker was already inside the house. Further, Plaintiff notes that Sergeant Burton admits in a deposition there was no hot pursuit. (ECF 52-1 at 156). The house was then surrounded by officers so police could have secured a warrant while Coker was trapped inside. (ECF 63 at 4); (ECF 51 at 5); (ECF 52-1 at 156). Evidence supporting Plaintiff's position includes deposition testimony and body camera footage showing that prior to the police kicking the door in, the children in the house do not look distressed and Plaintiff conveyed the fact that she will be home momentarily over the Ring camera speaker. (Dunakin Body Camera (Exhibit I) at 12:30; 9:26). Also supporting her position is footage of a young boy calmly exiting the back door with his arms raised, not fleeing from the home or telling the police Coker was inside threatening or harming the other children. (Hoover Body Camera (Exhibit J) at 15:50).

It is undisputed that the Officer Defendants entered Plaintiff's home without consent and without a warrant. Plaintiff has presented evidence to demonstrate the existence of a genuine issue of material fact as to whether the Officer Defendants had an objectively reasonable belief that there was a compelling need to act to prevent harm to the children in the house and no time to obtain a warrant. *Andrews,* 442 F.3d at 1000. A reasonable jury, considering the facts most favorable to Plaintiff could conclude from

10

the current record that there were no exigent circumstances and the Officer Defendants' failure to obtain a warrant before forcing entry into her home violated her Fourth Amendment rights. Accordingly, the first inquiry of the qualified immunity analysis, whether there was a violation of a constitutional right, does not favor Defendants. *Williams*, 733 F.3d at 758.

The Court will now turn to the second prong, whether Plaintiff's Fourth Amendment rights at issue were clearly established at the time of the incident. *Id.* To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). No reasonable officer could claim to be unaware of the general rule that absent consent or exigent circumstances, a warrantless search of a house is presumptively unconstitutional. This general rule is well-established by the Supreme Court, it is not a "close case" that protects officers making "snap judgment[s] in a legally hazy area." *White v. Stanley*, 745 F.3d 237, 241 (7th Cir. 2014). The Officer Defendants were in a scenario that required them to identify a true exigency before entering Plaintiff's home without a warrant. Therefore, as noted by Plaintiff in her motion for partial summary judgment, the Officer Defendants are not protected by qualified immunity. (ECF 51 at 6). A jury will be allowed to consider Plaintiff's claim that Defendants violated her Fourth Amendment rights when they kicked in the back door to search for Coker.

These genuine issues of material fact preclude the Court from finding as a matter of law that it was reasonable or unreasonable for the Officer Defendants, given the

circumstances they faced, to believe that there was a compelling need to act and no time to obtain a warrant. Therefore, Defendants' motion for summary judgment is **DENIED** as to the Section 1983 claims against the Officer Defendants and Plaintiff's motion for partial summary judgment is **DENIED** as to liability on the Section 1983 claims against the Officer Defendants.

### B.   *Monell* Claim

Defendants also argue that Plaintiff fails to put forth any evidence that the City of Fort Wayne had an official policy or custom that caused the alleged unconstitutional conduct; therefore, the *Monell* claim fails and their motion for summary judgment should be granted. (ECF 48 at 10). In response and in her motion for partial summary judgment, Plaintiff argues that even though Sergeant Burton admitted there is no policy for arresting a suspect in a third party's home, she may procced "with a policy of omission claim" because Fort Wayne's policies are deficient. (ECF 63 at 7, 8); (ECF 51 at 7). The Seventh Circuit has called this "policy of omission" approach "more confusing than useful." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

A plaintiff can sue local governments under Section 1983 when an official policy of that local government inflicts the injury that the government as an entity is allegedly responsible. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, a local government may be liable for monetary damages if the plaintiff can show that the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an

official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). It is unclear "how frequently conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'" *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward,* 843 F.2d 967, 983 (7th Cir. 1988)).

Both the Defendants and Plaintiff provide the Court with excerpts of FWPD policy on "Arrest, Search, and Seizure," which states that officers can act without a warrant when exigent circumstances are present and provides examples of four exigent circumstances. (ECF 65 at 11); (ECF 52-1 at 221, 223). This policy aligns with the law as outlined by the Supreme Court in *United States v. U.S. Dist. Ct. for E. Dist. of Mich*. and *Welsh v. Wisconsin*. 407 U.S. at 318; 466 U.S. at 749. Plaintiff does not put forth any evidence to support her contention that FWPD's policy omits anything relevant regarding warrantless searches. She alleges that "the City of Fort Wayne had no policy regarding the issuance of a search warrant under these circumstances," but that allegation is unsupported by the evidence as presented by Defendants. (ECF 51 at 8). As discussed above, at issue is whether a reasonable person in the position of the Officer Defendants, seeing what they saw, and hearing what they heard, would conclude that exigent circumstances existed to justify the entering of Plaintiff's home. *Bogan*, 644 F.3d at 571–72. The "Arrest, Search, and Seizure" policy informs FWPD officers of examples of exigent circumstances sufficient to justify a warrantless arrest, a policy that is directly on point for the instant dispute. (ECF 65 at 11); (ECF 52-1 at 223).

Summary judgment is the "put up or shut up moment in a lawsuit" and Plaintiff needed to present what evidence she had to convince the Court that there is a genuine

13

dispute of material fact as to FWPD's policies or practices regarding warrantless searches. *Hammel*, 407 F.3d at 859. She did not do so, therefore Defendants' motion for summary judgment as to the *Monell* claim against the City of Fort Wayne is **GRANTED**.

### C.   Declaratory Judgment

In their motion for summary judgment, Defendants argue that Plaintiff is not entitled to declaratory judgment because it will not remedy her alleged past harms and it addresses the same issues as the substantive suit and therefore serves no purpose. (ECF 48 at 11) (citing *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002)). Plaintiff, on the other hand, argues that declaratory relief is required because "the City of Fort Wayne must train its officers to live up to the spirit of the law requiring that the police officers obtain search warrants and/or arrest warrants for individuals who are hold – up (*sic*) in the home of a third party." (ECF 63 at 8).

"[A] plaintiff seeking injunctive relief must show that [s]he is in immediate danger of sustaining some direct injury." *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff has not shown that she is in immediate danger of sustaining a direct injury nor has she shown that her past exposure to allegedly illegal conduct shows a present controversy regarding injunctive relief. *Id.* As noted by Defendants, Plaintiff "has not established that she is likely to be subject to officers kicking in her back door again to search for a

14

fleeing suspect . . . and she lacks standing to bring this claim." (ECF 48 at 12); (ECF 65 at 14). Therefore, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's request for the declaratory judgment.

### D.    Punitive Damages

Finally, Defendants argue in their motion for summary judgment that Plaintiff has no claim for punitive damages because she has presented no evidence to suggest that the Officer Defendants' actions were "motivated by evil motive or intent, or that their actions involved reckless or callous indifference to the federally protected rights of the plaintiffs." (ECF 48 at 12). Plaintiff concedes that Sergeant Hollis and Burton believed they were acting under FWPD policies yet also argues that their actions were "reckless, malicious, intentional, and were in callous disregard and deliberately indifferent to the rights of the Plaintiff's (*sic*)." (ECF 63 at 9).

Punitive damages are only appropriate in a Section 1983 action "when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 30 (1983). Defendants are correct that Plaintiff has not shown evidence that any of the Officer Defendants were motivated by evil motive or intent, or reckless or callous indifference to Plaintiff's rights. Plaintiff admits that Sergeant Hollis and Burton believed that they were acting under FWPD policies and nothing on the body camera footage or the deposition testimony contradicts this conclusion. Therefore, Defendants'

15

motion for summary judgment is **GRANTED** as to Plaintiff's request for punitive damages.

IV.    **CONCLUSION**

For the reasons discussed above, Plaintiff's motion for partial summary judgment as to liability is **DENIED** (ECF 54). Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part (ECF 46). The only claims remaining to be resolved are the Section 1983 claims against the Officer Defendants and damages.

SO ORDERED on August 14, 2025.

                                                                      /s/*Cristal C. Brisco*
                                                                      CRISTAL C. BRISCO, JUDGE
                                                                      UNITED STATES DISTRICT COURT